Arguing on behalf of the account is Michael Navigado, and arguing on behalf of the accolade is Michael Navigado, and I represent the appellant Amy Holtorf. This case comes before this court by way of an interlocutory appeal from the trial court's entry of both an ex parte order of protection on an emergency basis, as well as a plenary order of protection at the conclusion of an evidentiary hearing. During the ex parte order of protection, findings were made by the trial court. A specific finding was made by the trial court that the box was checked that abuse occurred. The trial court defined that abuse to be neglect. The trial court did not define the abuse to be any of the other definitions of abuse under the Illinois Domestic Violence Act. Under the plenary order of protection and more telling, when the trial court entered its findings after the evidentiary hearing, the trial court did not find abuse. The specific findings that were entered by the trial court indicated that the trial court found neglect and entered the plenary order of protection solely on the basis of neglect. It is from these findings that the appellant Amy Holtorf appeals the trial court's entry of these orders on the grounds that the court did not have the statutory authority under the Illinois Domestic Violence Act to enter an order of protection on the sole basis of neglect without first finding that the petitioner was a high risk adult with disabilities. Before I reach the substantive portion of my argument, I want to point out to the court that there does appear to be a difference of opinion as to the standard of review. We've indicated in our appellant brief that the standard of review is de novo because we are asking the court to consider this issue as a matter of law based upon the statutory construction of the Illinois Domestic Violence Act. The appellee has suggested that the standard of review is whether or not the trial court abused its discretion in entering the orders of protection. It is our position and is respectfully submitted that this court should review this matter de novo because the appellant is attacking whether or not the court had the statutory authority in the first place to enter these orders of protection. What about the possibility that the standard of review is manifest way to the evidence? When I research the case law on this issue, when you're talking solely as a matter of law as to whether or not the court is acting within the confines of a statute, the appellate courts have said that that is to be reviewed by the appellate court de novo. The standard of review has not been suggested by the appellate court to be a manifest way to the evidence because we're asking the court to consider whether or not in the first place the court had the statutory authority under the Act to act in the way that it did. Therefore, I respectfully suggest to the court that we're asking the court to interpret the statute based upon the language contained in the statute. When you say authority, are you talking about subject matter jurisdiction? No, Your Honor. I'm not talking about subject matter jurisdiction. Clearly, the court has subject matter jurisdiction under the Illinois Constitution. The courts of this State get their subject matter jurisdiction from the Constitution and, therefore, have the subject matter jurisdiction over all justifiable matters. We are suggesting that there's case law from the appellate court that says that when a court acts based upon the strictures of the statute, it must, and this is the Supreme Court time. What is the fact that the trial court based its judgment of neglect upon? The findings with regard to the ex parte order are simply the written findings out of the form findings that were entered in Kane County. Kane County has a form order which has findings. The findings indicate neglect. There are no other findings in that order with regard to abuse. About after the hearing or during the hearing? The hearing was not transcribed by a court reporter. We don't have the transcript from the hearing. When previous counsel tried that case, when we came in and filed a motion to vacate that, we again attacked solely the court's findings. Again, the trial court entered. It wasn't attacking the findings of the trial court. I believe the term neglect is a determination of law. The finding that when I say that the respondent minor, the petition has been established that the respondent minor is neglected, that's a determination of law. That's not a finding of fact. That is a conclusion of law based upon the facts of the trial court heard. And we don't dispute the fact that the court made a conclusion that there was neglect. Typical findings of fact relating to neglect are things like the house is too cold. There are vermin throughout the house. The child is being given drugs or alcohol or non-prescription drugs. Or the child is not being fed and clothed and sheltered properly. Those are facts upon which a trial court makes a determination of neglect. So what I'm asking you is what were the findings of fact that the trial court made upon which it entered its judgment of neglect? We don't know, Your Honor. Then how are we supposed to reverse the trial court? It's the appellant's position that even on a conclusion of law of neglect, that the Illinois Domestic Violence Act does not give the trial court the authority to enter an order of protection because neglect is specifically defined under the act to apply only to high-risk adults with disabilities. So even assuming, which we are for purposes of this argument, that the court was correct in finding that these children were neglected, because the petitioner in this cause was not a high-risk adult with disability, the neglect provision of the act is inapplicable to this petitioner. Under Section 201 of the act, the act specifically states that the persons protected are any person abused by a family or household member, or, again in the conjunctive, a high-risk adult with disability who has been abused, neglected, or exploited. So the legislature has seen fit to describe the petitioner differently. There's family or household members who have been abused, and there are high-risk adults who have been abused, neglected, or exploited. So if the court makes a conclusion of law, as Your Honor has suggested, that there has been neglect, the petitioner still would have to establish under the Illinois Domestic Violence Act that they are a high-risk adult with disability or proceeding on behalf of a high-risk adult with disability. This is also indicated in Section 201B of the Illinois Domestic Violence Act, which again states that you can only file an order of protection for a person abused by a family or household member, and then again in the conjunctive, or by a person on behalf of a high-risk adult with disability who has been abused, neglected, or exploited. So there again, the legislature in that part of the IDVA is suggesting that, again, we're treating these petitioners differently. And again, we're not contesting the trial court's finding or conclusion that there has been neglect. We're contesting whether or not the court had the authority to act or enter this order for these children without first making a finding or a conclusion that this petitioner was a high-risk adult with disability. More telling is the petition that was filed, which is in the record, which indicates who the petitioner is. There is a box that is indicated that suggests that you are a high-risk adult with disability. That box has not been checked. There's no evidence that's been presented or no evidence in the record, and none suggested by the appellee in the brief. I'm sorry, you just said there's no evidence in the record, correct? There's no evidence in the record to suggest that this petitioner is a high-risk adult with disability. And why is that? Because the petition that was filed doesn't indicate that this petitioner was a high-risk adult with disability, and the findings that were made by the trial court do not suggest that this petitioner was a high-risk adult with disability. What findings are you talking about? The ones that weren't included in the transcript that wasn't filed? The findings that were contained in the written findings made by the trial court at the conclusion of both hearings. There are detailed findings that are set forth in the record, findings with regard to who the parties were, who the minors were, who the abused individuals were, what the abuse consisted of, what the likelihood of success or what the shifting of burdens in regard to the availability. When you said what the abuse was, did you mean what the abuse was or what the neglect was? Well, it's difficult to say, and I don't mean to try to confuse the court, but when we're dealing with the ex parte order of protection, the trial court indicated that it found abuse and then defined that abuse as neglect. When the trial court entered the findings with regard to the plenary order of protection, the trial court struck out the word abuse and inserted the word neglect and found neglect. So when we're dealing with the emergency order of protection, the trial court suggested that it made a conclusion that there was abuse and defined that abuse as neglect, whereas on the plenary order of protection it seemed to be solely a finding or a conclusion of neglect and not a conclusion of abuse. So there was two different findings with regard or conclusions with regard to the different orders that were entered. When the court is to construe the statute, the court is to consider the plain language of the statute and take the statute in the given language and give it its plain and ordinary meaning. When the statute is clear and the words are clear and the definitions are clear, the court is to construe the statute within the confines of the statute itself and not to look outside the statute. It is respectfully submitted to the court that when you review all the provisions of the Illinois Domestic Violence Act as a whole and not in isolation of one another, it is clear that this act makes a difference between petitioners who are family and household members and petitioners who are high-risk adults with disabilities. And what if we do find that there has been an error in that regard? If there's been an error in that regard, the Supreme Court in NRA VB suggests that when a trial court acts outside the strictures of the statute, that that action is void and is respectfully submitted to this court that if an action is void, therefore, the orders of protection should then be vacated because the court did not have the power to act under the statute in the manner in which it did. But that case does not say we have to disregard everything else that we physically have before us, even though, as Justice McClaren has pointed out a couple of times, we neither have a transcript of the hearing or, if not transcribed as you've indicated, a bystander's report of that proceedings. That's correct. Now to look at other documents in the record, including handwritten items in the orders of protection or other boxes checked in the orders of protection. Well, it's respectfully submitted, Your Honor, that the basis of the appellant's argument is not on the strength of what was contained in the trial transcript. It is on the strength of what the trial court found or the conclusions that the trial court made. That you shouldn't present it to us. Well, I understand in that regard there was no hearing or there was no transcript of the proceeding. It was the appellant's position that the findings that were made by the trial court and the conclusions that were made that were identified is the strength of the appellant's case. But you're still not telling us what the findings were, because we don't have anything before us that says what the court said the findings were, other than the documents, including the order of protection, that clearly indicates that there is some concern about the respondent having the children near a retail establishment. And the reason we don't have that before you is because we are conceding the fact that the trial court made a conclusion that these children were neglected. Does it make a difference whether we call it neglect or abuse? I think it does, Your Honor, because the terms are defined differently under the Act. I appreciate that, but to look at the factual background that's not contested and conclude that would be abuse, even though the trial court called it neglect. From that standpoint, if there was evidence in the record to suggest that these children were abused, then there could be a finding under the Act that the order was appropriate. However, on the record that's before the court, the only conclusion that was made is that these children were neglected and they were not abused. The trial court specifically struck the word abuse from its findings when it entered the plenary order of protection. So it was cognizant of the fact that there was not, in the court's mind, abuse that existed. In the court's mind, the actions only consisted of neglect. Well, if we determine that the trial court was correct in its findings but was incorrect in its conclusion of law, do we reverse the trial court on the basis that its conclusion of what label it's going to apply was a reversible error? Or do we determine that as a matter of law, the allegations which he found to be not abuse but neglect, if we determine that as a matter of law it was abuse, that we therefore affirm the judgment? If you were to find that the trial court acted improperly in finding neglect, which is the sole issue that's before the court at this particular time, it's respectfully submitted that because this petitioner was not a high-risk adult with disability, that the trial court did not have the authority to act in the way that it did. And again, and I don't mean to repeat something I've already said, but we're not contesting what the trial court found or the conclusions that the trial court reached. We're suggesting to the court that the conclusion that the trial court reached, which is neglect that existed, is not the basis of the entry of an order of protection. There may be another vehicle available under Illinois law, it's respectfully submitted, for which these children can be protected. But in the fashion and way the Domestic Violence Act was utilized in this case, it is submitted to the court that the court acted outside its authority to do so because the legislature saw fit to make a distinction between those individuals who are neglected and those individuals who are abused. So theoretically, you're saying that you're only contesting that conclusion, and even though you've submitted the rest of the order to us, we should not look at the language of the rest of the order? Well, I'm not suggesting to Your Honor you shouldn't look at the rest of the language in the order. It's part of the record, and you clearly have the right to consider everything that's contained within the order. But I would submit to Your Honor that there's nothing in the order that would suggest to this court that these children were abused or that Mr. Holtorf was a high-risk adult with disability as a petitioner. The body of the orders that were entered, both the ex parte order, the findings, and the petition, and the petition for plenary order protection, and the order that was entered in the findings, only established that the trial court made a conclusion of neglect and did not make any finding that this was a high-risk adult with disability. Did I answer your question, Your Honor? Well, you did, but you're going around in a circle. You can't say, you cannot tell me definitively what the trial court's findings were because you haven't provided me with anything to indicate what the trial court said at the hearing. So you're speculating. I am working off the findings that were contained in the record. I mean, there are written findings, the record at page 805, findings of the order of protection, and there's certain findings that were made, and the court made those findings. It is a form order. It's checked off as to what those findings were. But there are other things in that order, and I've already cited one that is of some concern. I'm sorry. As to visitation, the children shall not be near a retail establishment nor be left outside of a retail establishment unattended. That's correct. That's in there. That's the remedy that the court fashioned because the court— the order of protection that indicated this was a problem. I agree. Whether it's a high-risk individual or not. Well, I agree with Your Honor. The trial court made a finding of neglect, and the trial court felt that it was empowered under the IDVA to go ahead and enter an order of protection, and the trial court made those remedies because the trial court was concerned about that neglect. And I don't dispute that, and we're not here to dispute that. What we're respectfully suggesting to the court is the court, in the first place, didn't have the authority to enter that order in spite of the fact of the conclusion that it reached on neglect because that portion of the statute doesn't apply to this petitioner. And it is respectfully submitted that as the IDVA has written, that if you change that, you're writing something into the statute that the legislature did not intend. You wrote in your standard of review portion of your brief, and I believe you said it in oral argument here today, that the standard on review is a matter of law. Did you not? I did. Would it be more correct to say that the standard of review is de novo review? Yes. I think I said that as well. I think that was written both in the brief as— Yes, in the standard of review. I don't believe in the standard of review. I thought I just reviewed it. I thought I saw it. Oh, yes, the last words are de novo review, even though you say that the issue is a matter of law. You have no further questions? I feel I have an opportunity to respond. Thank you, Your Honor. You're welcome. Mr. Shaw. Thank you, Your Honor. Why did you allow—were you the trial attorney in this case? I was not, Your Honor. Why did Appleby's trial lawyer allow the trial court to enter into judgment based upon neglect instead of abuse? I don't know in particular. Although I'd like to address neglect as it relates to abuse and neglect as it relates to the Illinois Domestic Violence Act, and I think the answer may be forthcoming from that, but standing—I wasn't standing there that day to know why they checked one box instead of the other. Go ahead. May it please the Court and counsel, I'm Matt Shaw from Shaw, Jacobs & Associates, PC, on behalf of the Appleby Michael Holtorf. I agree that the appellant seeks a de novo standard of review, and to the extent that it involves a statutory interpretation, I agree that it is a de novo standard of review. The issue is namely whether the trial court can enter an order of protection pursuant to the Illinois Domestic Violence Act based solely upon neglect. The Illinois Domestic Violence Act of 1986 contains a provision regarding construction, as the appellant has cited in Benjamin v. McKinnon, and that is that the DBA shall be liberally construed and applied to promote its underlying purposes, which the legislature then lists. In statutory construction, and now citing People v. Olson for the de novo review standard, People v. Olson, 335 L.F. 3rd 372, we give the language its plain and ordinary meaning, and we read the statute as a whole and consider all relevant provisions together. I'm going to refer to sections 103, sections 214, and sections 215 together. These rules of construction require us to consider the reason and necessity for the statute, the evils to be remedied, and the object to be obtained by the statute, and to, and this is so important, to avoid a construction of this statute, the IDVA, that would defeat its purpose or yield an absurd or unjust result. So, among the purposes, the Illinois Domestic Violence Act indicates to recognize that domestic violence is not conducive to healthy childhood development. Section 214b-5 talks about the neglect. It indicates that in order to protect a child from abuse, neglect, et cetera, the court may take action. If neglect only applied to adults with high-risk disabilities, and I believe that's the crux of Amy Holtorf's position here, saying if an order of protection is entered based upon neglect, it must be an adult with high-risk disabilities. Our position is, no, neglect is covered under the Illinois Domestic Violence Act, and it may apply to children, even though it's not specifically listed under the definition of abuse in 103. If there's any question remaining for this panel, why the legislature added a definition so specifically of neglect and referred to high-risk adults with disabilities, I call your attention to Public Act 86-542, enacted in 1989. That's when the legislature added the definition neglect under section 103 and referred specifically to adults with high-risk disabilities. I think it's so important that the statute had already referred to neglect of children, not in the definitions, but in sections 215 and 214. Under 215C1I, the IDVA asked the court to review the nature, frequency, severity, pattern, and consequences of the respondent's past abuse, neglect, or exploitation. That was already in the statute. Under 214C12, it requires or directs the court to consider as relevant factors in determining whether to grant an order of protection the danger that any minor child will be abused or neglected. So is the problem, as you see it, not so much the conclusion that was drawn, but maybe the form that is being used here? Perhaps, Judge, and that's where I was going in that at the very end of this, and Justice Jorgensen indicated, isn't this a form of abuse? Couldn't the court have checked abuse? I think, in a strict reading of the statute, maybe the court should have checked abuse. I'm going to cite a case, or actually cite from a case cited by the appellant, that harmless errors are to be ignored in the orders to be given its effect. So I will jump ahead to my conclusion in that if this court sees any problem or lack of authority, although I don't think there will be at the end of my argument, then I think the court should remand for the court to check that box. What about the fact that the court crossed out the box for abuse in some fashion? I think the two cases that we'll get to will explain that, because I think that the court has a general understanding of abuse under 103 as containing only those items under the definition. And I think the statute, when read as a whole in pari materia, refers to, or rather is interpreted as referring to, the Juvenile Court Act, which contains a very lengthy definition and examples of neglect. The Illinois Domestic Violence Act does the same thing with stalking, although stalking is not listed as a form of abuse. Later in the statute, when they talk about remedies, they say, refer to the Criminal Code of 1961. There are your definitions for stalking. Although the statute didn't specifically say, we're going to list every form of possible abuse, and when it comes to neglect, look to the Juvenile Court Act, the 4th Appellate District did that in order to interpret what neglect is. May I proceed? Under A.B. Holtorf's analysis of the case, any minor child that is neglected would never be protected under the Illinois Domestic Violence Act. And that child would have to look to other civil and criminal remedies. But one of the purposes of the Illinois Domestic Violence Act in section 102, subsection 6 says, is to expand the civil and criminal remedies for victims of domestic violence, including when it's necessary to effectuate a physical separation from further abuse. The myriad of possibilities for one person to abuse another cannot possibly be captured in the narrow definitions of section 103. And that's why I indicate stalking as an example. Again, statutory construction requires that we avoid a construction of the statute that would defeat the statute's purpose or yield an absurd or unjust result. I would state that finding a child neglect is certainly a purpose under the Illinois Domestic Violence Act that that child needs protection. I don't think anyone can seriously argue that that's not a purpose of this act since it's contained in the remedies, and it's something that the court must look to before it issues an order. If I understand your argument correctly, let me know if I'm wrong. What you're saying is that this form may be appropriate under certain statutes but may be inappropriate under others as far as proper application is concerned. I'd like to understand that better. Do you mean by not checking the abuse box? I'm saying that the form doesn't cover every permutation of every statute. That is absolutely correct. And to dovetail into Justice Hutchinson's question, I believe the court could have checked the box for abuse. Although I think that when the court reads the face of the statute, I think the trial court tends to think of physical abuse or one of those definitions of abuse. And when the court looks to the remedies, purposes of the act, and what we're trying to prevent such as child neglect, it checked that box, and the appellant is taking a very, very strict, on-the-face look at the definition and saying, well, it's not under abuse and it's not under neglect, and therefore you can't issue an order of protection based on neglect of a child. But the cases that I'm going to refer to I think will clarify that. So the statute specifically references neglect of children in sections 214 and 215, and that predates the public act that included neglect of adults with high-risk disabilities. So if neglect was only meant to apply to adults with high-risk disabilities, neglect would not be one of the relevant factors for the court to consider, and it is. It would not be something that the court could remedy, and it can. The statute specifically references those. So how do the cases deal with it? There are two cases that discuss this at some level. One is Frank v. Hawkins, which is the case that Amy Holtorf cites in her favor, and the other is Moen v. Holland, which we cite in our favor. But I think when you look at both cases, I think the answer becomes evident that neglect is protectable under the Illinois Domestic Violence Act. The case that serves as Amy Holtorf's contention that it applies only to minors or only to adults with disabilities is Frank v. Hawkins. But the court in that case never heard any evidence that the respondent had neglected the minor children. It was never argued to the trial court that the respondent had committed neglect, and the petitioner, for what it's worth, did not file a brief, and the appellate court did not cite the Moen case, which favors our position. The court did not go into any analysis of how neglect is defined in pari materia with the Juvenile Court Act. None of that's mentioned. But on the last page of the ruling, and I read as almost an afterthought, they say the only remedy imposed that appears to be inappropriate is, quote, neglect, because it is defined to apply specifically to high-risk adults with disabilities. But there was no brief, no in-depth analysis. They did not acknowledge that those remedies existed prior to, independent of, I'm sorry, that the neglect of children existed independent of and prior to the 1989 amendment that added the new definition, if they had done so, and if they had even cited the Moen case, they would not have reached the same result, especially in light of the further language of that ruling that says respondent need not have previously exhibited behavior that would fit squarely in each of the remedies granted herein before the trial court could order that he be prohibited from doing so in the future. The Moen v. Holland case, also from that district and five years earlier, is the only case to deal directly with the issue of whether neglect applies to minors, prior to Frank v. Hawkins, and Frank did not look to Moen for authority. In Moen, the respondent was alleged and found to have neglected the minor child therein. It must be concluded that Moen applied the proper analysis in determining whether to grant protection to a minor child when neglect has occurred. In Moen, they recognized that they must consider neglect as one of the factors, and in order to define neglect, and this is one of the major questions of the day, is they look to the Juvenile Court Act of 1987, they read it in conjunction, and find the definition of neglect of a minor child in section 2-3, subsection 1 of the Juvenile Court Act. They say it's presumed that statutes relating to the same subject are governed by one spirit and a single policy, neglect of children, one of the very first things that Your Honor had said, and the statutes are read in pari materia, giving effect to both provisions. How else in statutory construction can you give this effect? Children that are subject to neglect, that have remedies under the Domestic Violence Act, are entitled to an order of protection. In the case at hand, the trial court in our case had looked to In Re, D.R., and M.R. in determining whether shoplifting with minor children constitutes neglect, and they found that it created an injurious environment that placed the minor child in harm and met the definition of neglect. And that language closely mirrors some of the policies of the Illinois Domestic Violence Act in that statute. In Moen, the trial court considered abuse to a child in determining whether to issue an order, even though the child for whom the order was sought was not directly subjected to abuse. There's the authority. The child was not directly subjected to abuse, and yet the court found it so important to protect the child from neglect. Under Amy Holtorf's reasoning, those relevant factors under Section 214 are just irrelevant, unless you can actually also tag on that some other form of abuse occurred. In her analysis, neglect and stalking are not considered abuse and not protectable. But the Illinois Domestic Violence Act directs that it be liberally construed, that the purposes be promoted, and those include expand the civil and criminal remedies, and the remedies that specifically include protecting the children from neglect. I believe the Juvenile Court Act doesn't have jurisdiction to protect adults with disabilities. Is that correct? I believe that's correct. So under the Juvenile Court Act, there would not be any relief available to a neglected adult. I think that's correct, and probably the reason that in 1989 they added it to the Illinois Domestic Violence Act. Is it your contention that the phraseology in the Domestic Violence Act is supposed to be an additional remedy that is available to neglected adults as opposed to excluding neglected minors? That is correct, and that's the only interpretation that makes any sense. Otherwise, how would the Order of Protection Act already included remedies for neglected children? That's the only construction that makes any sense. It would be senseless or absurd. I'm sorry. Did I say something? You just said that's the only one that makes any sense, which struck it. My alliteration. But prior to that Act specifically including adults with disabilities, the Act provided for children that were neglected under the remedies and purposes of the Act. And again, the definitions of abuse under the Illinois Domestic Violence Act are not meant to be static and rigid in their definitions, but literally construed. So the case that Amy Holt. You can close, please. The Frank case, the court, even in the case that she cited, the Frank case, says the duty of the reviewing court is to consider the trial record as whole and ignore errors that are harmless. If there is any issue that the court still believes the trial court exceeded its statutory authority, then and only then should the case remand to the trial court to make a determination as to whether the respondent's actions constituted other types of abuse. In other words, if this panel finds that neglect is not protectable under the Illinois Domestic Violence Act, I would ask that the trial court have an opportunity to determine whether physical abuse includes knowing a reckless use of physical force, confinement, or restraint, and whether it would fit under that definition, or knowing a reckless conduct which creates an immediate risk of physical harm. Accordingly, Michael Holtorf prays that this honorable court deny Amy Holtorf's request for reversal of the emergency order of protection and plenary order of protection. Thank you. Thank you. Thank you. Mr. No, I'm sorry, Mr. Navigato. Thank you, Your Honor. Your Honor, as I direct your attention to 214A, because I think 214A directly addresses Mr. Shaw's points on the issues he presented. 214A states if the court finds, and it uses that word, that petitioner has been abused by a family or household member, or that petitioner is a high-risk adult who has been abused, neglected, or exploited, and it uses that in the conjunctive, and then it says the court shall issue an order of protection. The court must find that the family or household member has been abused. Section 103 defines abuse. Section 103 does not use the term neglect. Michael Holtorf's argument is asking this court to extend the Domestic Violence Act to something that the legislature did not intend to cover. The legislature didn't intend to cover children who were placed in injurious environments. Is that your position? My position is that under the act as written it does not cover children who have been neglected unless they are in the possession of a high-risk adult with disability. Based upon the language that's contained in the statute, it's a difficult position to take. Well, you're basically saying the opposite. He says it makes sense to interpret it that way, and you're saying it doesn't make sense to interpret it that way. Well, I think I'm suggesting based upon the plain language of the statute as written. He's asking you to go outside the statute and to read it in perimeteria with the Juvenile Court Act. The rules of statutory construction seem to suggest that if the words are defined within the act itself and the words are clear from the plain face of the words themselves, you are not to go outside the act and construe any other provision or any other act in perimeteria with the Juvenile Court Act. Here we have a clear definition of neglect in Section 103 of the act, which is specifically limited to high-risk adults with disabilities. And in that regard, I don't think the legislature, and I respectfully submit this, intended not to provide any type of protection for minor children who are neglected. I think the legislature was fully aware that there are other vehicles to secure that type of protection. And I think we would all agree that the Domestic Violence Act is not a full sweeping type of act that is going to protect every type of instance or every type of situation that doesn't fall under the umbrella of abuse. Abuse is very liberally defined under the act. There's like six or seven different definitions of what is abuse. But are you saying that a trial judge is bound by the specific language of the statute when considering the best interests and welfare of a child? Yes, I am, Your Honor. I am saying that. And how can that be when you look at any other statutory authority that relates to best interests? And don't tell me that I can't, because I can't. I'm not suggesting that you can't. I mean, you could be free, the court could be free to look at whatever provision that it wants. But if it goes ahead and looks at a different provision, then I think it violates what the Supreme Court has said, is that when you garner your authority from a statute and the statute is clear and you're acting under that statute, you must act within those strictures. You cannot go beyond the stricture of that statute. And so I guess in a way, and I apologize that I'm doing this, but I think in a way I am saying the trial court could not go outside. I apologize, counsel, you're representing your client's interests admirably. I'm suggesting that you can't go outside the strictures of the statute because it is clear. To do so would amount essentially to judicial legislation because the legislature has clearly said, neglect applies to high-risk adults with disabilities. Did they leave it open? Did they leave a loophole? Did they leave a place where children may be neglected and not covered under this act? Quite possible. Does it need to be amended? Quite possible. Based upon what we have here today and what's before your honors, I respectfully submit to your honors that at this particular time, based upon these facts, the trial court could not act in the way that it did. I'd like to address Mowen just briefly. Counsel says in Mowen that the trial court in that case specifically found neglect, and I respectfully disagree with that finding. If you read the language in Mowen, which I cited in my brief, the Mowen case specifically found that there was an abused child in the household, and that abuse is the triggering factor to allow the court to go ahead and enter an order of protection and enter remedies under 214B and 214C. 214B and 214C that counsel has cited to your honors, which talks about neglect, are remedy sections. You don't get to the remedies until the court has the authority or makes the requisite findings to enter an order of protection in the first place, and that's what we're here attacking is whether or not the court had the requisite authority or the power to enter the order in the first place. You never get to the remedies. In addition, 214 doesn't distinguish between what type of petitioner is before the court. 214 doesn't make a distinction between a petitioner who's a high-risk adult with disability or a petitioner who's not a high-risk adult with disability. So when the legislature used the words abuse, neglected, or exploited, it was covering all petitioners because there's a different standard for petitioners who are high-risk adults with disabilities and those who are not. Based upon those reasons, it is respectfully submitted by any court, and I respectfully pray that this court...